**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| 9/0 TRANSPORT & SALES, INC., | § | |
| | § | |
| | § | BANKRUPTCY CASE NO. 25-20016 |
| | § | |
| DEBTOR | § | |

**SUBCHAPTER V DEBTOR'S PLAN DATED APRIL 17, 2025**

This is the Plan of Reorganization in the subchapter V case of 9/0 Transport & Sales, Inc. (the "Debtor"). You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. You may wish to consult an attorney about your rights and your treatment under the Plan.

**NONSTANDARD PROVISIONS**

☐ **If this box is checked, the Plan contains nonstandard provisions in Article 6.**

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

Debtors' Plan of Reorganization provides for the continued operations of the Debtors to make payments to its creditors as set forth in this Plan. Debtors proposed to pay allowed unsecured based on the liquidation analysis and cash available. Debtors anticipate having enough business and cash available to fund the plan and pay the creditors pursuant to the proposed plan. It is anticipated that after confirmation, the Debtors will continue in business. Based upon the projections, the Debtors believes it can service the debt to the creditors. Debtors seek to confirm a consensual plan of reorganization so that all payments to creditors required under the Plan will be made directly by the Debtors to its creditors. If the Debtors must seek confirmation of this Plan pursuant to § 1191(b), then the Subchapter V Trustee will act as payment administrator under the Plan.

**ARTICLE 1**
**RELEVANT BACKGROUND AND FINANCIAL INFORMATION FOR DEBTOR**

☐ **If this box is checked, this Article is impacted by a nonstandard provision. Please review Article 6 of the Plan for further details.**

**1.1     Nature of the Debtor's Business.**

9/0 Transport & Sales, Inc. manages and operates a trucking and construction company and elected to file a chapter 11 reorganization as the best means to resolve the current liabilities of the company and determine the secured portions of those creditors.

**1.2    History of Business Operations of the Debtor**

9/0 Transport & Sales, Inc. started operations in August 2014.

The Debtor is a trucking and construction company. We trade trucking for asphalt milling material, we then resell the material to oilfield and farmer/ranches. With selling the material comes the construction of building the roads. We build farm/ranch/homestead roads along with smaller oilfield roads and pads. We also run trucks to haul materials for different companies.

**1.3    Legal Structure and Ownership.**

The Debtor is currently owned 100% by Matthew Clay Muniz. Mr. Muniz will remain managing member and retain his 100% ownership interest going forward.

**1.4    Events Leading to the Filing of the Bankruptcy Case.**

When the construction side of the business was added in July 2022, the contractor they hired to build this part of the business and did not complete jobs to the satisfaction of the clients. This in turn put all of the bad debts on the business.

**1.5    Filing of the Debtor's Chapter 11 Case.**

On January 17, 2025, the Debtor filed voluntary petitions for relief under the Bankruptcy Code (the "Code").  The Chapter 11 case is pending in the United States Bankruptcy Court in the Southern District of Texas.  The Debtor's Schedule of assets and liabilities and statements of financial affairs were filed with the Petitions and is at docket number [1] for 9/0 Transport & Sales, Inc.

**1.6    Liquidation Analysis.**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to the Plan as **Exhibit A.**

**1.7    Feasibility Analysis.**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.  The Debtor has provided projected financial information as **Exhibit B.**  Based on the plan projections, the Debtor's total projected disposable income, as that term is defined by section 1191(d), to be committed to the payment of claims for the period described in section 1191(c)(2) for sixty (60) months is $140,830.37.

1.8    **Avoidable Transfers.**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

## ARTICLE 2
## THE PLAN

☐ **If this box is checked, this Article is impacted by a nonstandard provision. Please review Article 6 of the Plan for further details.**

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code proposes to pay creditors of the Debtor from income generated from continued operations of the Debtor. Treatment of Creditors' claims is determined by which class such claim belongs to. Claims have been classified below in accordance with section 1122 of the Code.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.

A class that is not impaired is deemed to accept the Plan.

**2.1** **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

**A. Administrative Expenses**

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Administrative Tax Claim | $0 | Payment through the Plan as follows: |
| Debtor's counsel fees and expenses | $25,000.00 | Payment through the Plan as follows: The debtor continues to deposit post-petition retainer payments as ordered by the Court and will continue until the fees are paid in full. |
| Other estate professional fees: [name/role] | $0 | Payment through the Plan as follows: |
| Subchapter V Trustee | $5,000.00 | Payment through the Plan as follows: The debtor shall continue with monthly deposits as ordered by the Court and pay any balance upon entry of an Order on the Sub-V Trustee's application for compensation. |
| Other Administrative Claim: [detail] | $0 | |
| TOTAL | $30,000.00 | |

**B. Priority Tax Claims.**

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Texas Comptroller of Public Accounts (POC 4-1) | $33,715.40 | 2024 | Debtor will pay the claim in full at 8.50% per annum in monthly payments beginning with the month of the petition date January 2025 for 60 months at $753.54 per month. |
| Live Oak CAD (POC 8-1) | $10,904.38 | 2024-2025 est | Debtor will pay the claim in full at 12.00% per annum in |

4

|  |  |  | monthly payments beginning 30 days after the Effective Date for 60 months at $242.56 per month. |
|---|---|---|---|

**2.2** **Classes of Claims and Equity Interests.**

The following are the classes of claims set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**A. Classes of Secured Claims**

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1a | *Secured claim of*: Ally Bank in the amount of $60,189.95; POC 1-1<br><br>Collateral description: 2022 Dodge RAM Crew Truck VIN 5700<br><br>Allowed Secured Amount: $55,000.00 | No | Yes | The Allowed Secured Value of the Collateral will be paid, with interest of 8.5% per annum in sixty (60) monthly installments of $1,128.41 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months.<br><br>Deficiency in the amount of $5,189.95 to be classified and treated as a general unsecured Claim. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1b | *Secured claim of*: Ally Bank in the amount of $57,135.30; POC 3-1<br><br>Collateral description: 2021 Ford F250 VIN 8308 | No | Yes | Debtor intends to surrender the collateral back to the creditor on or before the Effective Date of the Plan. Creditor will have 30 days after the Effective Date to file an Amended Proof of Claim stating the deficiency claim or no deficiency claim shall exist.<br><br>The estimated deficiency in the amount of $11,835.30 to be classified and treated as a general unsecured Claim. If there is no deficiency then the additional monies shall be distributed amongst the other unsecured claims in this class. |
| **Class #** | **Description** | **Insider?** | **Impairment** | **Treatment** |
| No. 1c | *Secured claim of*: Ally Bank in the amount of $32,494.83; POC 6-1<br><br>Collateral description: 2022 GMC Canyon VIN 6879<br><br>Allowed Secured Amount: $27,662.50 | No | Yes | The Allowed Secured Value of the Collateral will be paid, with interest of 8.5% per annum in sixty (60) monthly installments of $567.54 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months.<br><br>Deficiency in the amount of $4,832.33 to be classified and treated as a general unsecured Claim. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1d | *Secured claim of*: Ally Bank in the amount of $19,780.56; POC 7-1<br><br>Collateral description: 2017 Ford F150 VIN 1950 | No | Yes | Debtor intends to surrender the collateral back to the creditor on or before the Effective Date of the Plan. Creditor will have 30 days after the Effective Date to file an Amended Proof of Claim stating the deficiency claim or no deficiency claim shall exist.<br><br>The estimated deficiency in the amount of $5,000.00 to be classified and treated as a general unsecured Claim. If there is no deficiency then the additional monies shall be distributed amongst the other unsecured claims in this class. |
| **Class #** | **Description** | **Insider?** | **Impairment** | **Treatment** |
| No. 1e | *Secured claim of*: BMO Bank NA in the amount of $28,004.34; POC 2-2<br><br>Collateral description: 2022 Doonan Steel Drop Deck Flatbed Trailer VIN 9022<br><br>Allowed Secured Amount: $23,000.00 | No | Yes | The Allowed Secured Value of the Collateral will be paid, with interest of 8.5% per annum in sixty (60) monthly installments of $471.88 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months.<br><br>Deficiency in the amount of $5,004.34 to be classified and treated as a general unsecured Claim. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1f | *Secured claim of*: Caterpillar Financial Services in the amount of $106,665.00; No Claim Filed<br><br>Collateral description: 2019 CAT 140M3 VIN 0674<br><br>Allowed Secured Amount: $100,000.00 | No | Yes | The Allowed Secured Value of the Collateral will be paid, with interest of 8.5% per annum in sixty (60) monthly installments of $2,051.65 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months.<br><br>Deficiency in the amount of $6,665.00 to be classified and treated as a general unsecured Claim. |
| Class # | Description | Insider? | Impairment | Treatment |
| No. 1g | *Secured claim of*: Daimler Truck Financial Services USA in the amount of $10,000.00; No Claim Filed<br><br>Collateral description: 2013 Trox Vacuum VIN 7201<br><br>Allowed Secured Amount: $8,000.00 | No | Yes | The Allowed Secured Value of the Collateral will be paid, with interest of 8.5% per annum in sixty (60) monthly installments of $164.13 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months.<br><br>Deficiency in the amount of $2,000.00 to be classified and treated as a general unsecured Claim. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1h | *Secured claim of*: De Lage Landen Financial Services in the amount of $135,167.72; POC 22-1<br><br>Collateral description: (2) 2019 Hyundai Wheel Loaders VIN: 0621 & 0729<br><br>Allowed Secured Amount: $135,167.72 | No | Yes | The Allowed Secured claim will be paid in full, with interest of 8.5% per annum in sixty (60) monthly installments of $2,773.17 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1i | *Secured claim of*: First State Bank of Texas in the amount of $60,380.00; POC 16-1<br><br>Collateral description: 2000 Kenworth VIN 0483 & 2007 Kenworth VIN 9790<br><br>Allowed Secured Amount: $55,190.00 | No | Yes | The Allowed Secured Value of the Collateral will be paid, with interest of 8.5% per annum in sixty (60) monthly installments of $1,132.31 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months.<br><br>Deficiency in the amount of $5,190.00 to be classified and treated as a general unsecured Claim. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1j | *Secured claim of*: First State Bank of Texas in the amount of $71,928.58; POC 17-1<br><br>Collateral description: 2023 Ford F350 VIN 0296<br><br>Allowed Secured Amount: $58,500.00 | No | Yes | The Allowed Secured Value of the Collateral will be paid, with interest of 8.5% per annum in sixty (60) monthly installments of $1,200.22 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months.<br><br>Deficiency in the amount of $13,428.58 to be classified and treated as a general unsecured Claim. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1k | *Secured claim of*: First State Bank of Texas in the amount of $68,963.00; POC 18-1<br><br>Collateral description: (4) International Trucks VIN's 4072, 4091, 4087 & 4094<br><br>Allowed Secured Amount: $68,963.00 | No | Yes | The Allowed Secured Claim will be paid in full, with interest of 8.5% per annum in sixty (60) monthly installments of $1,414.88 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months. |

10

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1L | *Secured claim of*: First State Bank of Texas in the amount of $22,118.39; POC 19-1<br><br>Collateral description: 2000 Kenworth VIN 0483 & 2007 Kenworth VIN 9790<br><br>Allowed Secured Amount:  $22,118.39 | No | Yes | The Allowed Secured claim will be paid in full, with interest of 8.5% per annum in sixty (60) monthly installments of $453.79 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1m | *Secured claim of*: Ford Motor Credit Company in the amount of $47,823.41; POC 5-1<br><br>Collateral description: 2022 Ford F150 VIN 9305 | No | Yes | Debtor intends to surrender the collateral back to the creditor on or before the Effective Date of the Plan. Creditor will have 30 days after the Effective Date to file an Amended Proof of Claim stating the deficiency claim or no deficiency claim shall exist.<br><br>The estimated deficiency in the amount of $5,000.00 to be classified and treated as a general unsecured Claim.  If there is no deficiency then the additional monies shall be distributed amongst the other unsecured claims in this class. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1n | *Secured claim of*: Mitsubishi HC Capital American Inc in the amount of $24,872.00; No Claim Filed<br><br>Collateral description: 2022 Brazos Belly Dump VIN 4949<br><br>Allowed Secured Amount: $16,000.00 | No | Yes | The Allowed Secured Value of the Collateral will be paid, with interest of 8.5% per annum in sixty (60) monthly installments of $328.26 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months.<br><br>Deficiency in the amount of $8,872.00 to be classified and treated as a general unsecured Claim. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1o | *Secured claim of*: US Bank in the amount of $45,000.00; No Claim Filed<br><br>Collateral description: 2022 Ford F350 VIN 2390<br><br>Allowed Secured Amount: $6,000.00 | No | Yes | The Allowed Secured Value of the Collateral will be paid, with interest of 8.5% per annum in sixty (60) monthly installments of $123.10 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months.<br><br>Deficiency in the amount of $39,000.00 to be classified and treated as a general unsecured Claim. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1p | *Secured claim of*: U.S. Small Business Administration in the amount of $210,926.40; POC 14-1<br><br>Collateral description: All Assets of the Debtor<br><br>Allowed Secured Amount: $210,926.40 | No | Yes | The Allowed Secured Value of the Collateral will be paid, with interest of 3.75% per annum in sixty (60) monthly installments of $3,860.78 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1q | *Secured claim of*: Unique Funding Solutions in the amount of $108,548.36; PO C 25-1<br><br>Collateral description: All Assets of the Debtor<br><br>Allowed Secured Amount: $108,548.36 | No | Yes | The Allowed Secured Value of the Collateral will be paid, with interest of 8.5% per annum in sixty (60) monthly installments of $2,227.04 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months. |

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| No. 1r | *Secured claim of*: Channel Partners Capital LLC in the amount of $87,620.16; POC 15-1<br><br>Collateral description: (2) 2024 Brazos Belly Dump VIN's 4042 & 4043<br><br>Allowed Secured Amount: $45,000.00 | No | Yes | The Allowed Secured Value of the Collateral will be paid, with interest of 8.5% per annum in sixty (60) monthly installments of $923.24 beginning on the 15th day of the calendar month following the effective date of the plan and continuing on the 15th day of each month for the sixty (60) months.<br><br>Deficiency in the amount of $42,620.16 to be classified and treated as a general unsecured Claim. |

B. **Classes of Priority Unsecured Claims.**

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 2 | Internal Revenue Service (POC 9-2) | $265,053.26 | Debtor will pay the claim in full at 0.00% per annum in monthly payments beginning 30 days after the Effective Date for 60 months at $4,417.55 per month. |

C. **Class[es]of General Unsecured Claims**

General Unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. A table of all claims, their estimated amounts, whether the claim is allowed or disputed, and their anticipated distribution under the Plan is attached hereto as **Exhibit C.**

14

The following chart identifies the Plan's proposed treatment of general unsecured Class[es], which contain general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| No. 3 | The general unsecured Creditor Claims shall receive $633,132.60 which is 18.58% of the total unsecured claims of $1,754,370.10. | Yes | All allowed unsecured creditors shall receive a pro rata distribution at zero percent (0%) per annum over the next five (5) years. These debts shall be paid at the end of each quarter, and that first quarter shall begin not later than the 1st day of the first full calendar month following 30 days after the effective date of the plan and continuing for the life of the Plan. The payments shall be made out of the unsecured creditors pool of $1,754,370.10 distributed to unsecured creditors over the life of the Plan, but the first year of payments shall be reduced only by the amounts paid to the convenience creditors and only these unsecured creditors will receive distributions in years 1-5. |

**D. Class[es] of Equity Interest Holders.**

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company, the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders: [There may be more than one class of Equity Interest holders in, for example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.]

| Class # | Names & Description | Impairment | Treatment |
|---|---|---|---|
| 4 | Matthew Clay Muniz – 100% | No | No Distribution from Plan Payments. |

**2.3** **Claims Allowance Process.**

Any Claim detailed on the Debtor's schedules for which the Debtor did not select disputed, unliquidated, or contingent is deemed an allowed claim under this Plan. For all other Claims, the Debtor must file a Proof of Claim by the Bar Date in order to receive a distribution under the Plan.

The Debtor may object to the amount or validity of any Claim within sixty (60) days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.

No partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. The provisions of this section are not intended to restrict payment of any Allowed Claims which are not disputed. Until a Disputed Claim is resolved, payment distributions to claimants holding disputed claims will be retained by the Disbursing Agent subject to a final resolution of the Disputed Claim. Upon resolution in favor of the Allowed Claim the Disbursing Agent will distribute withheld funds within the next payment period. If the Disputed Claim is disallowed, the Disbursing Agent will make withheld funds available to allowed claim holders within the next payment period in accordance with this Plan.

**2.4** **Treatment of Executory Contracts and Unexpired Leases.**

The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date: The Debtor does not have any executory contracts.

Except for the executory contracts and unexpired leases that have been assumed, and if applicable assigned, herein, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

**A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.**

Any claim based on the rejection of an executory contract or unexpired lease under this section will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.

**2.5** **Means for Implementation of the Plan.**

The Debtors will continue operating its business to generate funds to fund plan payments. The Debtors' Plan will break the existing claims into four classes of Claimants. These claimants will receive repayments over a period of time beginning on or after the Effective Date.

16

**2.6      Payments by Disbursing Agent.**

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Debtor.

**If the Plan is confirmed under section § 1191(b), the Debtor proposes that the Sub V Trustee Melissa A Haselden act as the disbursing agent.**

**2.7      Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Matthew Clay Muniz | Manager | Salary |

**2.8      Tax Consequences of the Plan.**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.*

The following are the anticipated tax consequences of the Plan:

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtors. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder.

**ARTICLE 3
DISCHARGE.**

**3.1 Discharge**

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

   (1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

   (2) if applicable, of the kind specified in section 523(a) of this title.

# ARTICLE 4
# GENERAL PROVISIONS.

☐ **If this box is checked, this Article is impacted by a nonstandard provision.  Please review Article 6 of the Plan for further details.**

### 4.1 Vesting of Property of the Estate.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 4.2 Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 4.3 Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 4.4 Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters:

(i)     to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan;

(ii)    to rule on any modification of the Plan proposed under section 1193;

(iii)   to hear and allow all applications for compensation to professionals and other Administrative Expenses and enter final orders;

(iv)   to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and

(iv)   to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

18

**4.5 Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## ARTICLE 5
## DEFINITIONS

5.1   The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan and they are supplemented by the following definitions:

>  **"Debtor"** shall mean 9/0 Transport & Sales Inc.
>
>  **"Bar Date"** The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was March 28, 2025. The Bar Date for governmental units to file Proof of Claims with the Bankruptcy Clerk is not later than 180 days from petition date.
>
>  **"Effective Date"** The effective date of this Plan is 30 days after the "Confirmation Date".

## ARTICLE 6
## NONSTANDARD PROVISIONS

6.1   The following nonstandard provisions shall be applicable to the Plan:

A.   Injunction Against Interference with Plan.

Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment on their Claims or Interest except as otherwise provided in the Plan from Debtors.

B.   Events of Default and Effect Thereof

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtors to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days after mailing written notice of default from such creditor to the Reorganized Debtors. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Robert "Chip" Lane
The Lane Law Firm
6200 Savoy Drive
Suite 1150
Houston, Texas 77036-3300

The Debtors will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court.

      C.      <u>Non-Voting Claimant/Creditor's Effect on Class</u>
If a Claimant/Creditor is entitled to vote and fails to timely return a ballot according to the procedures outlined in this plan, that Claimant or Creditor's vote of class may be disregarded for purposes of determining that Class' acceptance of the Plan.

Respectfully submitted,

By: 9/0 Transport & Sales, Inc.

*/s/ Matthew Muniz*
Matthew Muniz, Owner


By: THE LANE LAW FIRM, PLLC

*/s/ Robert C. Lane*
Robert C. Lane
State Bar No. 24046263
notifications@lanelaw.com
A. Zachary Casas
State Bar No. 24097469
zach.casas@lanelaw.com
6200 Savoy, Suite 1150
Houston, Texas 77036
(713) 595-8200 Voice
(713) 595-8201 Facsimile
COUNSEL FOR DEBTOR